IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MICHAEL STEPHEN JOHNSON, )
)
        Plaintiff, )
)
v. ) 1:15CV538
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
        Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Michael Stephen Johnson ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on July 13, 2011, alleging a disability onset date of July 1, 2010. (Tr. at 21, 218-30.)[1] He later amended his alleged onset date to March 31, 2011. (Tr. at 142.) Plaintiff's applications were denied initially (Tr. at 73-106, 143-48) and

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

upon reconsideration (Tr. at 107-40, 152-69). Thereafter, he requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 170-71.) Plaintiff, along with his attorney and an impartial vocational expert, attended the subsequent hearing on September 19, 2013. (Tr. at 21.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 30), and on May 13, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "chronic back pain secondary to lumbar degenerative disease with multi-level radiculopathy; disc protrusion at L4-L5 and bulging disc at L5-S1; cervical radiculitis; morbid obesity; peripheral polyneuropathy; right knee pain secondary to degenerative joint disease of the right knee and status post arthroscopy; hypertension; bipolar disorder; obstructive sleep apnea with recommended use of CPAP; and moderate right carpal tunnel syndrome." (Tr. at 23.) The ALJ found at step three that none of these impairments

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

met or equaled a disability listing.  (Tr. at 24-25.)  Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform light work, defined as lifting up to 10 pounds frequently and 20 pound occasionally, with the following additional restrictions:

> He can occasionally climb ramps or stairs.  He can never climb ropes, ladders, or scaffolds.  He can occasionally balance, stoop, or crouch.  He can frequently handle or finger, bilaterally.  He must avoid concentrated exposures to extreme temperatures, especially extreme cold.  He can perform simple, routine, and repetitive tasks in a low stress environment, requiring only occasional decision-making, occasional changes in the work setting, and no rate production or pace work.  He can occasionally interact with coworkers or the public.  He must work in isolation with only occasional supervision.

(Tr. at 25.)  Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to his past relevant work.  (Tr. at 29.)  However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy.  (Tr. at 29-30.)  Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. at 30.)

Plaintiff now argues that, in reaching the above disability determination, the ALJ (1) failed to "properly evaluate the opinions of Dr. Dunn, Dr. Robbins, and Dr. Runheim, as well as the examining source opinions of Dr. Sanders," and (2) failed to "properly apply the requisite two-step test to evaluate [Plaintiff's] complaints of pain and anxiety/depression." (Pl.'s Br. [Doc. #11] at 7, 10.)  After a thorough review of the record, as discussed in detail below, the Court agrees that the ALJ failed to properly evaluate or explain her evaluation of the medical opinions in this case, and particularly failed to evaluate Dr. Runheim's opinion in accordance with Social Security Ruling ("SSR") 96-2p and 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule."  Based on that determination, the

6

Case 1:15-cv-00538-WO-JEP   Document 15   Filed 10/19/16   Page 6 of 15

Court agrees that remand is required. In light of that determination, the Court need not reach the additional issues raised by Plaintiff at this time, as all of the issues raised by Plaintiff can be considered on remand.

In considering Plaintiff's contentions, the Court first considers Plaintiff's claim that the ALJ failed to properly evaluate the opinion of Dr. Runheim. In raising this claim, Plaintiff points to the treating physician rule, which generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never

7

accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

Where an ALJ declines to give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p, at *5 (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

In the present case, Dr. Runheim, Plaintiff's treating neurologist, completed a form medical statement on April 2, 2013. In that statement, he identified Plaintiff's diagnoses as lumbar radiculopathy, peripheral neuropathy, cervical radiculopathy, and carpal tunnel syndrome. He then indicated that, as a result of these conditions, Plaintiff is limited to standing for no more than 15 minutes at a time, sitting for no more than 30 minutes at a time, lifting no more than 5 pounds frequently and 20 pounds occasionally, never bending or stooping, and only occasionally raising either arm above the shoulder or performing manipulations with either hand. Dr. Runheim further opined that Plaintiff would frequently need to elevate his legs during a workday, and that his impairments ultimately rendered him "fully and permanently disabled." (Tr. at 661.)

The ALJ addressed Dr. Ruheim's opinion as follows:

> As for the opinion evidence, the undersigned gives partial weight to Dr. Runheim's physical assessment. In a medical source statement dated April 2, 2013, Dr. Runheim opined that the [Plaintiff] had various exertional, postural, and manipulative limitations due to his neurological impairments, and concluded that he was fully and permanently disabled. The opinion deserves partial weight because there is no clear evidence to support the restrictions for carpal tunnel syndrome.

(Tr. at 28.) Thus, the ALJ purported to give "partial weight" to the Dr. Runheim's opinion, and apparently rejected Dr. Runheim's opinion only as to Plaintiff's carpal tunnel syndrome. However, the ALJ did not account for the other limitations set out by Dr. Runheim. The ALJ's assessment of Dr. Runheim's opinion is, at best, puzzling. At no point in her decision does the ALJ further address Dr. Runheim's opinion, explain which of his opined limitations can be attributed to carpal tunnel syndrome, or provide any basis for discounting the limitations which clearly cannot be linked to that impairment, including sitting, standing, bending, stooping, and the need to elevate his legs. Significantly, Dr. Runheim's opined limitations as to each of these functions unmistakably differs from those ultimately included in Plaintiff's RFC assessment, and nothing in the ALJ's decision even arguably can be said to account for this discrepancy.[4]

Nevertheless, the Commissioner asserts, in a series of conclusory, one sentence allegations, that the ALJ properly discounted Dr. Runheim's treating physician opinion. In particular, she contends (1) that "the ALJ did not reject the opinion of Dr. Runheim but,

---

[4] This failure is particularly notable given Dr. Runheim's long-term treatment of Plaintiff for his back pain. Dr. Runheim treated Plaintiff with medications and epidural steroid injections throughout the period at issue (Tr. at 298, 300, 303, 474, 478, 481). In addition, MRIs and x-rays showed disc desiccation with degenerative changes, disc herniation, stenosis, and nerve root encroachment (Tr. at 296, 386-87, 402, 421, 592, 599), and records reveal abnormal nerve conduction studies with "electrodiagnostic evidence of active right L5 lumbosacral radiculopathy" (Tr. at 301). Ultimately, Plaintiff underwent nerve root blocks (Tr. at 388, 394, 445, 463-64, 461), and the surgeon proposed rhizotomy to sever or disable the nerve roots (Tr. at 448.).

9

rather, assigned it partial weight," (2) that Dr. Runheim noted "only 'moderate' severity based upon diagnostic testing," (3) that "after treating [Plaintiff] with injections for only two months in 2013, Dr. Runheim found no significant limitations in function and recommended only braces at night for [Plaintiff's] complaints of grip strength loss and increasing hand numbness," and (4) that "Dr. Runheim's check-box form opinion indicating that [Plaintiff] was 'fully and permanently disabled' was not supported by his own treatment notes nor consistent with other evidence of record." (Def. Br. [Doc. #13] at 8.)

In her first challenge, the Commissioner correctly asserts that an ALJ's decision to assign weight to portions of a physician's opinion while declining to credit others is certainly well within the ALJ's purview. However, an ALJ must also articulate her reasons for doing so, and those reasons must be supported by substantial evidence. Smith v. Colvin, No. 2:13-CV-37-D, 2014 WL 4322323, at *5 (E.D.N.C. Aug. 7, 2014), report and recommendation adopted, No. 2:13-CV-37-D, 2014 WL 4352338 (E.D.N.C. Sept. 2, 2014) (internal citations omitted). Then, and only then, can substantial evidence be said to support the ALJ's ultimate findings. Here, in contrast, the ALJ specifies partial weight but fails to explain which part or parts of the opinion she is discounting. Moreover, she never addresses the applicability of any of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), or even attempts to "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). As explained above, these factors must be considered whenever an ALJ chooses not to assign "controlling weight" to a treating physician's opinion, not only when an ALJ declines to assign any weight at all. In all circumstances, an ALJ must "provide sufficient explanation for 'meaningful review' by the

10

courts." Thompson, 2014 WL 185218, at *5; SSR 96-2p. Because the ALJ failed to do so in the present case, remand is required.

The Court further finds that resolution of the Commissioner's remaining three contentions "would require excessive intrusion into the ALJ's domain." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. Mar. 25, 2014). As noted in Anderson, this Court's "[r]eview of the ALJ's ruling is limited . . . by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)).

Here, the ALJ presented a single reason for her assignment of partial weight to Dr. Runheim's opinion, namely that "there is no clear evidence to support the restrictions for carpal tunnel syndrome." (Tr. at 28.) She did not assert, as the Commissioner now suggests, that she assigned the opinion little weight because it consisted of a form questionnaire, that the opinion was otherwise unsupported by Dr. Runheim's own treatment notes, or that it was inconsistent with other evidence of record. Moreover, the ALJ certainly never explained *how* the opinion differed from the other evidence in question in accordance with the treating physician rule. In fact, aside from assigning weight to his medical source statement, the ALJ's decision mentions Dr. Runheim only once, noting his diagnosis of Plaintiff, upon testing, with moderate sensorimotor polyneuropathy, peripheral neuropathy, moderate carpal tunnel

11

syndrome, cervical radiculitis, and multilevel lumbar radiculitis. (Tr. at 27.) Although the Commissioner now appears to contend that the use of "moderate" to describe the severity of some of Plaintiff's impairments demonstrates that the limitations stemming from those impairments were not as limiting as Dr. Runheim posits, she cites no evidence or case law to support this assertion. (Def.'s Br. at 8.)[5]

    Further, in asserting that "Dr. Runheim found no significant limitations in function and recommended only braces at night for [Plaintiff's] complaints of grip strength loss and increasing hand numbness" (Def.'s Br. at 8), the Commissioner, like the ALJ, addresses only Plaintiff's carpal tunnel syndrome, while ignoring Dr. Runheim's findings as to Plaintiff's additional impairments. On March 19, 2013, just two weeks before Dr. Runheim issued the medical source statement at issue, Plaintiff presented with "continued and worsening radiating low back pain, into the hips and down the legs" as well as "numbness and tingling down into the right lower extremity" which was worse with movement and better with rest. (Tr. at 480.) Dr. Runheim performed an EMG study at that time which evidenced radiculopathy at multiple levels which he described as "acute" and "chronic." (Tr. at 481.) He prescribed gabapentin, back exercises, and anti-inflammatories, and scheduled Plaintiff for an epidural steroid injection ("ESI"). (Id.) On April 3, 2013, Plaintiff reported that these measures were helping his back pain, as had previous injections, and he was scheduled to for a repeat ESI on May 7, 2013. By that point, Plaintiff's radiating back pain, numbness, and tingling had returned. (Tr. at 476, 478.) Notably, Dr. Runheim's treatment records also document consistent, objective

---

[5] Moreover, the term "moderate" was used to describe Plaintiff's sensorimotor polyneuropathy and carpal tunnel syndrome, but not Plaintiff's multilevel cervical radiculopathy and multilevel lumbosacral radiculopathy (Tr. at 481, 483), and the ALJ does not otherwise address Dr. Runheim's assessment of Plaintiff's back impairments.

evidence of numbness and decreased strength in all of Plaintiff's extremities throughout the time in question. (Tr. at 476, 478, 480, 483.)

Plaintiff returned for a third ESI on June 11, 2013. Despite taking hydrocodone and gabapentin for pain, which Plaintiff reported made him sleepy, he had to "splint his right leg to get into his truck and had severe pain shooting down his right leg." (Tr. at 474.) Dr. Runheim's plan on that date included scheduling an updated MRI of Plaintiff's lumbar spine and referring him to Dr. William Brown, a neurosurgeon, to "see if [Plaintiff] can get some more lasting relief" though surgical intervention. (Id.) Accordingly, the relevant evidence belies the Commissioner's characterization of Dr. Runheim's findings as minimal and unsupportive of the limitations set out in his opinion.

In recommending remand, the Court notes that the problems in the administrative decision extend beyond the ALJ's treatment of Dr. Runheim's opinion. For example, the treatment of a June 21, 2013 medical source statement issued by Plaintiff's treating family physician, Dr. Robbins, also merits greater explanation. Dr. Robbins posited limitations nearly identical to those opined by Dr. Runheim. (See Tr. at 664.) The ALJ addressed Dr. Robbins' opinion as follows: "The opinion is given partial weight, because it is an overstatement of the claimant's condition and because it is not supported by the medical evidence." (Tr. at 28.) There is no explanation of which parts of the opinion were given the partial weight and which were rejected, nor is there any explanation as to what portions of the opinion are an

13

"overstatement" or how the opinion in inconsistent with the medical evidence. As explained above, such cursory explanations fail to comply with the treating physician rule.[6]

The Court therefore concludes that remand is required so that the ALJ can provide specific reasons, supported by the evidence in the case record, for her treatment of each piece of opinion evidence, treating and nontreating, in a manner which allows meaningful judicial review. See Day v. Astrue, No. CIV 3:10CV0014, 2010 WL 2735702, at *5 (E.D. Va. June 16, 2010), report and recommendation adopted, No. 3:10CV14, 2010 WL 2756713 (E.D. Va. July 12, 2010) (citing 20 C.F.R. §§ 416.927(f)(2)(ii); 416.927(d)(2)) ("When an ALJ evaluates an opinion of any medical source—whether treating or nontreating—he is required to "explain in the decision the weight given" thereto and "give good reasons in [his] . . . decision for the weight."); see also Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)) (In making a determination regarding the weight to give to a medical source, the ALJ must "provide sufficient explanation for 'meaningful review' by the courts.").

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[6] The ALJ also fails to sufficiently address Plaintiff's mental health conditions, particularly the opinion of the consultative examiner, Dr. Sanders. Dr. Sanders opined that Plaintiff could not handle benefits in his own best interest due to his bipolar disorder and "would have difficulty tolerating the stress and pressure associated with day-to-day work activity" and "difficulty relating to others including fellow workers and supervisors." (Tr. at 399.) The ALJ discounted the assessment of Dr. Sanders solely because he was "a non-treating source." However, Plaintiff received ongoing mental health treatment from Dr. Robbins and from Daymark Recovery Services. Those records note, for example, GAF scores of 45, 44, 46, 45, 46, 45, 44, 44, and 43 at visits every three months from September 2011 through July 2013. (Tr. at 410, 415, 417, 495, 493, 491, 489, 487, 485.) This appears consistent with Dr. Sanders' determination. From the ALJ's decision, it is not clear what portions of Dr. Sanders' opinion were given partial weight and what parts were rejected, nor is it clear if there is any reason for rejecting the opinion other than the fact that it was a consultative examination.

Case 1:15-cv-00538-WO-JEP   Document 15   Filed 10/19/16   Page 14 of 15

under sentence four of 42 U.S.C. § 405(g).  The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation.  To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion to Remand [Doc. #10] should be GRANTED.  However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

    This, the 19th day of October, 2016.

    /s/ Joi Elizabeth Peake    
United States Magistrate Judge
